(C. D. 958)

S. KAUFMAN v. UNITED STATES

United States Customs Court, Second Division

(Decided October 17, 1945)

*Siegel & Mandell* (*Joshua Davidson* of counsel) for the plaintiff.
*Paul. P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: The merchandise in controversy consists of alarm-clock movements, unadjusted and without jewels. Duty was levied thereon at 55 cents each plus 65 per centum ad valorem under paragraph 368 (a) (1) (2) of the Tariff Act of 1930 as clock movements

of the kind therein described. The articles are claimed by the plaintiff to be properly dutiable at 75 cents each (the equivalent of $1.25 each less 40 per centum), the rate imposed under paragraph 367 (a) (1) (2) of said act on watch movements allegedly of the kind here imported. The competing provisions, so far as here pertinent, read:

PAR. 368. (a) Clocks, clock movements, including lever movements, clockwork mechanisms, time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, * * * and any mechanism, device, or instrument intended or suitable for measuring time, * * * or for * * * indicating time, or for * * * indicating, or performing any operation or function at a predetermined time or times, all the above (except the articles enumerated or described in paragraph 367), whether or not in cases, containers, or housings:

(1) If valued at not more than $1.10 each, 55 cents each; * * *
(2) any of the foregoing shall be subject to an additional duty of 65 per centum ad valorem;

*       *       *       *       *       *       *

PAR. 367. (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than one and seventy-seven one-hundredths inches wide, whether or not in cases, containers, or housings:

(1) If more than one and one-half inches wide, $1.25 each; * * *
(2) in the case of any of the foregoing having no jewels or only one jewel, the above rates shall be reduced by 40 per centum; * * *

It is obvious that in order to come within the purview of paragraph 367 (a), *supra*, the enumerated articles must be "less than one and seventy-seven one-hundredths inches wide." Consequently, the issue presented here turns upon the width measurement of the imported movements. If such measurement is over one and seventy-seven one-hundredths inches wide, the movements are not covered by paragraph 367, but are specifically provided for in paragraph 368 and dutiable thereunder as classified by the collector.

The prescribed statutory method for determining such width measurement is found in subparagraph (h) of said paragraph 367, and reads as follows:

(h) For the purposes of this paragraph the width of any movement, mechanism, device, or instrument, shall be the shortest surface dimension through the center of the pillar or bottom plate, or its equivalent, not including in the measurement any portion not essential to the functioning of the movement, mechanism, device, or instrument.

At the trial, in addition to the oral testimony offered by both parties, there were received in evidence a sample of the imported movements, marked "Exhibit 1," and the pillar or bottom plate thereof, marked "Illustrative Exhibit 2."

In due course the case was submitted for decision. Later, however, by agreement between the parties, the submission was set aside

and there was admitted in evidence as exhibit 3 a stipulation which was designed to clarify and elaborate the facts already established by the record.   The stipulation reads:

It is hereby stipulated and agreed by and between the attorneys for the parties hereto, subject to the approval of the Court, that the submission heretofore made herein be set aside and that this stipulation be received in evidence as Exhibit 3, and that the case be again submitted for decision with time allowed both sides for briefs if desired.

It is further agreed that the pillar or bottom plate of the mechanism before the Court is represented by the diagram below.

The point O is the center of the pillar plate.   The distance from point A to point B through point O is more than 1½ inches, but less than 1.77 inches.   The distance from point C to point D through point O is more than 1.77 inches.

Points E, F, G, and H are for the purpose of casing the movement and do not in any way pertain to or have anything to do with the functioning of the movement.

That projection X on which is located point C is used to hold the pinion upon which certain parts of the alarm mechanism attached to the movement are fixed.

Projection X is not necessary for the movement to function merely as a time keeping, time measuring or time indicating mechanism, device or instrument, but is necessary for the alarm mechanism to function, and the functioning of the movement is necessary to operate the alarm mechanism, although the movement itself will function as a time-keeping device without the operation of the alarm mechanism.

That if projection X is not an essential part of the pillar plate necessary to the functioning of the movement, the distance between points A and B, as indicated on the diagram herein is the shortest surface dimension through the center of the

pillar plate, not including in such measurement any portion not essential to the functioning of the movement.

That if projection X is an essential part of the pillar plate necessary to the functioning of the movement, the distance between points C and D as indicated on the diagram herein is the shortest surface dimension through the center of the pillar plate, not including in such measurement any portion not essential to the functioning of the movement.

As to the law applicable to the established facts herein, both parties cite as controlling the decision in *United States* v. *Invicta Seeland, Inc.*, 25 C. C. P. A. (Customs) 300, T. D. 49397, wherein the language of paragraph 367 (h), *supra,* was construed as if it were written:

(h) For the purposes of this paragraph the width of any movement, mechanism, device, or instrument, shall be the shortest surface dimension through the center of the pillar or bottom plate, or its equivalent, not including in the measurement *of said plate* any portion *thereof* not essential to the functioning of the movement, mechanism, device, or instrument.

The italicized words were added by the court with this observation:

Had the above italicized words, "of said plate" and "thereof," been actually contained in the paragraph, we do not think any claim could be made that anything other than the pillar plate is to be measured in determining the width of a watch movement.

In the course of its reasoning the court said:

* * *. Bearing in mind that the pillar plate is the foundation plate upon which nearly all of the different parts of the movement are erected or built, it is plain that the size of the various parts of a movement, generally speaking, is dependent upon the size of the pillar plate. Therefore it seems reasonable to conclude that Congress intended in paragraph 367 (h) that only the pillar plate should be measured, and only so much thereof as was essential to the functioning of the movement, regardless of the case in which it is to be placed; that is to say, only so much thereof as was reasonably necessary for the attachment thereto of the other parts of the movement which are normally attached to the pillar plate.

Then, in harmony with its view of the law, the court excluded from the width measurement of the watch movements before it (1) the winding stems, for the reason that they formed no part of the pillar plates; and (2) the so-called shoulders or extensions along the edges of the pillar plates, because they were employed only to encase the movements and had nothing whatever to do with the functioning thereof.

It is at once apparent from an examination of the decision in the *Invicta Seeland,* case, *supra,* that our appellate court regarded the language of subparagraph (h), *supra,* as shrouded in obscurity. This is evidenced by its observation—

* * *. That this paragraph is ambiguous is clear; that it is awkwardly and unhappily worded is certain; and that, standing alone, it is susceptible of two constructions is apparent.

Accordingly, for the purposes of that case, the court proceeded to clarify the meaning of the subparagraph by construing the language thereof as hereinabove indicated.

It will be noted that the subparagraph employs a double negative when it prescribes that—

\* \* \* the width of any movement, mechanism, device, or instrument, shall be the shortest surface dimension through the center of the pillar or bottom plate, or its equivalent, *not* including in the measurement any portion *not* essential to the functioning of the movement, mechanism, device, or instrument. [Italics ours.]

Affirmatively stated, that language must be construed as contemplating a width measurement which includes only parts of the pillar plate which are essential to the functioning of the movement. It specifically precludes consideration of any part of the plate which is not essential to such functioning.

Applying the reason of the court in the *Invicta Seeland* case, *supra*, to the established facts in the instant case, our conclusion as to the law in the premises is greatly simplified.

It is not seriously disputed that the imported mechanisms are in fact alarm-clock movements. Indeed, they seem fairly to respond to what constitutes a clock as that term is defined in Funk & Wagnalls New Standard Dictionary (1942). According to that authority a clock is—

An instrument for measuring and indicating the time of day by mechanical movements, usually consisting of a train of toothed wheels operated by a spring or weights, regulated by a pendulum and escapement, and moving pointers over a dial. \* \* \*. Clocks are named (1) from some mechanical feature; as, *alarm-clock*.

In fact, as we view the issue presented, the question submitted for our determination seems to be: Is that part of the pillar plate represented by what is referred to in the above stipulation as "Projection X" and illustrated on the aforesaid diagram, essential to the functioning of the instant alarm-clock movements?

We believe the answer must be in the affirmative. It may be, as agreed between the parties hereto, that "Projection X" "is used to hold the pinion upon which certain parts of the alarm mechanism attached to the movement are fixed," and that "the movement itself will function as a time-keeping device without the operation of the alarm mechanism." But that view totally ignores the nature and character of the movement and the primary purpose for which it was constructed and designed—to indicate the time not only visually but audibly as well.

In no true sense may it successfully be contended that the alarm mechanism is merely an accessory to the clock movement. It is an integral part thereof and implements the movement's main purpose— to indicate time. The hands of a clock move across the face of the

dial and pace the passage of time, their mute message being received, if at all, only when we direct our sight to them. But the alarm clock is more adequately equipped to serve its dual purpose. It not only indicates but announces the arrival of a predetermined time. In fact, an alarm clock is a small but essential cog in the complex mechanism of our economy.

A mere inspection of exhibit 1 is sufficient to show that the alarm device is physically a constituent and integral part of the imported article, and in our opinion the proof conclusively establishes that the so-called "movement" and its incorporated "alarm mechanism" constitute a single entity and were so constructed and designed. Obviously, being an alarm-clock movement it would be incapable of functioning as such without the alarm feature. And the alarm device cannot function unless and until the movement is set in operation.

In *Norma Co. of America* v. *United States*, 6 Ct. Cust. Appls. 89, T. D. 35338, our appellate court construed the scope of the provision for machine tools in the Tariff Act of 1909, in which act no specific provision was made for parts of machine tools. The court said:

It will be noticed that paragraph 197 contains no provision for parts of machine tools; hence thereunder the pertinent question here is what are the constituent parts of the machine tools in this case.

We think, speaking generally, the true interpretation of the paragraph is that any detachable or adjustable parts of a machine tool which are indispensable to enable it to perform the manifold operations for which it is designed, if imported therewith, not including reserve, duplicate, extra, or spare parts or purely hand tools or appliances, and not including belts designed to connect the tool with the motive power, are properly parts of a machine tool. To illustrate, one importing a machine tool designed to drill metal with drills of varying sizes would be entitled to import therewith as a constituent part thereof one set of the detachable, adjustable parts necessary and required to enable it to drill all the different sized holes for which it was designed, because otherwise it could perform only a part of its functions, while its availability, desirability, and practical use and value might depend upon its ability to drill holes of different sizes.

If the integrity of the machine tools there before the court embraced as constituent and integral parts thereof the separate and distinct articles imported therewith, because those articles were necessary to enable the machine tool proper to perform the manifold functions for which it was constructed and designed, then, *a fortiori*, the present movements, which are constructed and designed for use as alarm-clock movements, must necessarily include the alarm mechanisms which are incorporated therein as integral and constituent parts of such movements.

Inasmuch, therefore, as we are satisfied that the so-called "Projection X" on the above diagram represents a part of the plate which is essential to the functioning of these alarm-clock movements, and since according to the terms of the stipulation the distance between points C and D (which includes "Projection X") is the shortest

surface dimension through the center of said pillar plate which includes in such measurement only parts of the pillar plate essential to the functioning of the movement, we hold that the width measurement of the imported movements, as prescribed in subparagraph (h) of said paragraph 367, is more than one and seventy-seven one-hundredths inches. It therefore follows that the classification by the collector of the imported mechanisms under said paragraph 368 (a) (1) (2) as clock movements, dutiable at 55 cents each plus 65 per centum ad valorem, is correct.

The protest is overruled and the decision of the collector is affirmed. Judgment will be entered accordingly.