(C. D. 1166)

HELBROS WATCH Co.
EMIL LEICHTER } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 18, 1949)

*Lane, Young & Fox* (*Thomas M. Lane* and *William H. Fox* of counsel) for the plaintiffs.

*David N. Edelstein,* Assistant Attorney General (*Richard H. Welsh* and *Richard E. FitzGibbon,* special attorneys), for the defendant.

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) as amicus curiae.

Before LAWRENCE and TILSON, Judges; RAO, J., not participating

LAWRENCE, Judge: Imported watch movements are subject to the imposition of compound rates of duty which are provided for in paragraph 367 of the Tariff Act of 1930, as modified by the trade agreement between the United States and Switzerland, effective February

15, 1936 (69 Treas. Dec. 74, T. D. 48093). We are here concerned only with the base rate specified in said paragraph 367 (a) (1) which, insofar as it is here pertinent, reads as follows:

367 (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if less than 1.77 inches wide and not having more than 17 jewels, whether or not in cases, containers, or housings:

(1) If more than 1 inch wide_____ $0.90 each.
    If more than 9/10 of 1 inch but not more than 1 inch wide_____ $1.20 each.
    If more than 6/10 of 1 inch but not more than 9/10 of 1 inch wide__ $1.35 each.
    If 6/10 of 1 inch or less wide_____ $1.80 each.

      *        *        *        *        *        *        *

The rate of such duty depends upon the width of the movement and subdivision (h) of said paragraph 367 defines the method by which the width shall be ascertained as follows:

For the purposes of this paragraph the width of any movement * * * shall be *the shortest surface dimension through the center of the pillar or bottom plate,* or its equivalent, *not including in the measurement any portion not essential to the functioning of the movement,* * * * [Italics added.]

The problem which confronts us here is primarily the proper interpretation to be given to the italicized words above quoted.

The same controversial language formed the basic issue in *United States* v. *Invicta Seeland, Inc.,* 25 C. C. P. A. (Customs) 300, T. D. 49397, which will be fully discussed *infra,* and hereafter will be referred to as the *Invicta* case. The present controversy is to a degree a retrial of that case which plaintiffs seek to distinguish upon a new record.

Two protests have been consolidated for trial and counsel have displayed unusual diligence, industry, and research in the preparation, trial, and briefing of the subject. A great deal of time of the court, counsel, and litigants was abbreviated through the successful efforts of counsel in entering into an agreed statement of facts before trial and submitting it at the hearing in the form of a stipulation (exhibit A).

In addition, plaintiffs introduced the testimony of seven witnesses, all of whom were well-informed upon the matters about which they were interrogated. None was introduced by the defendant.

Two importations of watch movements are before us. Protest 110594–K relates to a so-called 11½ ligne round watch movement, represented by the movement in exhibit 1 and illustrated by the enlarged photograph in evidence as exhibit 1–B. The pillar or bottom plate is represented by exhibit 1–A. (The word "ligne" is a French word used in the Swiss watch industry as a unit of measure having a corresponding inch measurement in the United States.)

ASSEMBLY
SIDE

DIAL
SIDE

EXHIBIT 1-B

Protest 104821–K refers to what is known as a 10½ ligne round watch movement, represented by the movement in exhibit 2 and illustrated by the enlarged photograph in evidence as exhibit 2–B. Exhibit 2–A represents the pillar or bottom plate thereof.

Exhibits 1–B and 2–B provide visual evidence of the linear measurement relied upon by the adversary parties, the Government contending that the width from the letters C to D, on the assembly side of the plate, should be accepted, while plaintiffs rely upon either the measurement from A to B on the assembly side, or from E to F on the dial side of the movement.

The larger movements, represented by exhibit 1, were assessed for duty by the collector of customs as watch movements more than $\frac{9}{10}$ of 1 inch but not more than 1 inch wide at the base rate of $1.20 each in paragraph 367 (a) (1), as modified by the trade agreement, *supra*, and are claimed by plaintiffs to be dutiable in said paragraph as watch movements more than 1 inch but less than 1.77 inches wide at the base rate of 90 cents each.

The smaller movements, represented by exhibit 2, were assessed with duty by the collector as watch movements more than $\frac{9}{10}$ of 1 inch but not more than $\frac{9}{10}$ of 1 inch wide at the base rate of $1.35 each, as provided in said paragraph 367 (a) (1), as modified, *supra*, and are claimed by plaintiffs to be dutiable therein as watch movements more than $\frac{9}{10}$ of 1 inch but not more than 1 inch wide at the base rate of $1.20 each.

It is conceded in plaintiffs' brief that—

Assessments by the Collector on the movements in question for jewels in excess of seven, under paragraph 367 (a) (3), of said act as modified, and for copper content under Section 3425 of the Internal Revenue Code, are not contested by plaintiffs.

Hence, further reference will not be made to those assessments.

Exhibit 1–B is a photograph illustrating in enlarged form both surfaces of exhibit 1–A, namely, the dial side and the assembly side, respectively, and is reproduced here.

Exhibit 2–B is a photograph illustrating in enlarged form both surfaces (likewise identified as the assembly side and the dial side, respectively); and the edge view of exhibit 2–A, which is also reproduced.

The measurements, in inches from point A to point B, and from point C to point D, on the "assembly side," and from point E to point F, on the "dial side," of exhibits 1–A and 2–A, have been noted on exhibits 1–B and 2–B, respectively, and by agreement of the parties hereto (exhibit A) such measurements are as follows:

## EXHIBIT 1–B

| Surfaces measured | Measurements |
|---|---|
| *From point A to point B* (i. e. from one edge to the opposite edge of the assembly side of the plate.) | 1.0079 inches or more than 1 inch but less than 1.77 inches. |
| *From point C to point D* (i. e. from one edge of cut at C to opposite edge of the assembly side of the plate at D.) | 0.9792 inch or more than $\%_0$ of 1 inch but not more than 1 inch. |
| *From point E to point F* (i. e. from one edge to the opposite edge of the dial side of the plate.) | 1.0213 inches or more than one inch but less than 1.77 inches. |

## EXHIBIT 2–B

| Surfaces measured | Measurements |
|---|---|
| *From point A to point B* (i. e. from one edge to the opposite edge of the assembly side of the plate.) | 0.9173 inch or more than $\%_0$ of one inch but not more than one inch. |
| *From point C to point D* (i. e. from one edge of cut at C to opposite edge of the assembly side of plate at D). | 0.8917 inch or more than $\%_0$ of one inch but not more than $\%_0$ of one inch. |
| *From point E to point F* (i. e. from one edge to the opposite edge of the dial side of the plate.) | 0.933 inch or more than $\%_0$ of one inch but not more than one inch. |

The "dial side" of a pillar or bottom plate is the surface of the plate over which the dial of the movement appears, and the "assembly side" of the plate is the opposite surface thereof on which the other parts are assembled in the production of a watch movement.

The point marked V on exhibit 2–B occurs on all of the plates of the watch movements here in issue, and consists of that part of the plate referred to as "shoulders" in the *Invicta* case, *supra*.

In that case the court defined the term "shoulders," which it stated was agreed to by counsel therein, as follows:

The *shoulders* are narrow extensions on the sides of the pillar or bottom plates of the movements which serve the purpose of holding the movements in a proper position in the cases into which they are put, and also serve to some extent to keep dirt and dust out of the movements. * * *

The measurement from point E to point F on the dial side of exhibits 1–B and 2–B, respectively, includes the width of that part of said respective plates referred to as "shoulders" in the *Invicta* case, *supra*. The measurements from A to B and C to D on the assembly side of said plates do not include the width of the so-called shoulders of the plates.

In determining the width of the movements represented by those contained in exhibits 1 and 2, for the purpose of assessing the base rate of duty applicable thereto in paragraph 367 (a) (1), the collector of customs measured the surface dimension of the assembly side of

ASSEMBLY
SIDE

DIAL
SIDE

EXHIBIT 2-B

the pillar or bottom plate of the respective movements from the edge of a cut or indentation thereon at point C through the center of the plate to point D.

Plaintiffs contend that the width of the movements in question herein should be determined in accordance with the provisions of paragraph 367 (h), *supra*, from a measurement through the center of the dial side of the pillar or bottom plate of the movements from the edge of the plate at point E to the opposite edge of the plate at point F, as indicated in exhibits 1–B and 2–B.

As an alternative claim, plaintiffs contend that if the court holds that said dimension from point E to point F is not the shortest essential surface dimension of said plates within the intention of the Congress as expressed in paragraph 367 (h), *supra*, then the shortest essential dimension of the respective plates should be determined from a measurement through the center of the assembly side of the plates from point A to point B, as indicated on exhibits 1–B and 2–B.

The contentions of *amicus curiae* that "the width of the shoulders is completely immaterial in this case since their inclusion in the measurement would affect neither the classification nor the amount of duty payable upon them" and that "it would seem obvious that the Customs Court is without jurisdiction to rule upon the classification of a watch movement where there is no difference in either rate or amount of duty," citing *Fletcher* v. *United States*, 70 Treas. Dec. 835, T. D. 48684, are without merit.

It is obvious from an examination of photographic exhibits 1–B and 2–B that if either of the two measurements relied upon by plaintiffs were accepted it would necessarily result in a classification and rate of duty different from that adopted by the collector.

Therefore, two major questions are presented for our consideration.

First: In arriving at the width of the movements in controversy, is it proper to include the width of the so-called shoulders, as indicated by the measurement E to F on the dial side, portrayed on photographic exhibits 1–B and 2–B?

Second: If the first question be answered in the negative, should the width of the movement be measured on the assembly side from point A to point B, as claimed by plaintiffs, or from point C to point D, as determined by the collector of customs, neither of which dimensions includes the width of shoulders?

We shall approach these questions in the order stated.

Upon the first question, plaintiffs urge a reconsideration of the *Invicta* case, *supra*. As stated in their brief under the heading "The Issues,"—

In view of the contention advanced by the plaintiffs that the width of the shoulders of the pillar or bottom plate of the said movements properly should be included in the measurement of said plate in determining the width of the move-

ments, the issues presented herein involve a reconsideration of the construction of paragraph 367 (b) made by the Appellate Court in the case of *United States* v. *Invicta Seeland, Inc.,* 25 C. C. P. A. 300, T. D. 49397, *supra,* wherein the shoulders of the plate were held in effect not to be essential to the functioning of a watch movement, within the intention of the Congress in enacting said paragraph.

It is clear from an examination of the *Invicta* case, *supra,* that the principal question before the court was, as stated in its opinion, in the following words:

The controversy arises from the fact that, in determining the width of the involved movements, the collector excluded in his measurement the width of the so-called shoulders and the length of the winding stem, which brought them within the $2.50 classification under paragraph 367 (a) (1), while, if either the shoulders or the winding stem should be included, the movements would be brought under the $2.25 classification.

The court carefully analyzed the record, reviewed the legislative history of paragraph 367, examined statutes *in pari materia,* and, in reversing the trial court, held that the dutiable width of the movements in that case should not include either the winding stems or the shoulders.

In arriving at its conclusion, the appellate court said in substance that only the pillar or bottom plate should be measured, regardless of the case in which it is to be placed, and only so much thereof as is reasonably necessary for the attachment of those parts of the movement which are normally attached to the pillar plate; that while the stem of a watch movement is an essential part of such movement, it should not be included in determining the width thereof because neither the crown nor the stem is attached to the pillar plate and is not part of it.

In the light of these considerations, the court stated:

* * * it is our opinion that, as neither crown nor stem is attached to a pillar plate, they should not be measured in determining the width of a watch movement under paragraph 367 (h). Having in mind the object of Congress in determining the width of a watch movement, *we can see no purpose in measuring the shoulders or stems,* for the width of the former and the length of the latter have no necessary relation to the size of the principal parts of a watch movement. A movement with wide shoulders and a long stem may have smaller parts than another movement with narrower shoulders and a shorter stem.

We do not think that, in providing for the measurement of a watch movement, Congress was at all concerned with such movement being fitted into a case, for the relative size of movements could be much more accurately ascertained without regard to the stem or the shoulders of the pillar plate. [Italics supplied.]

In the case before us, it is noted that the stipulation of the parties, in evidence as exhibit A, states in part that—

The narrow projection around the edge of the dial side of the plate, illustrated at V on the photograph hereto appended as Exhibit 2–B, occurs on all of the plates of the watch movements in question, and *is the same in all material respects as the part of the plate referred to as "shoulders" in United States* v. *Invicta Seeland, Inc.,*

25 C. C. P. A. 300, T. D. 49397, and therein held to be excluded from the width measurement of the plate. [Italics supplied.]

and further that—

The width of the projection referred to as "shoulders" in *United States* v. *Invicta Seeland, Inc., supra,* is included in the above measurements from points E and points F on the dial side of the plates, but is not included in the above measurements from points A to points B and from points C to points D on the assembly side of the plates.

The appellate court points out in its opinion in the *Invicta* case that—

Most of the evidence in the case relates to the question of whether or not the shoulders upon the involved movements are essential to the functioning of the movement set in a watch case, and with respect to whether the stem is essential to the functioning of the movement, both when set in a watch case and irrespective of the casing of the movement.

With respect to the evidence in the instant case, there is no conflict in the testimony of commercial witnesses who testified in plaintiffs' behalf; their testimony with reference to the standard specifications upon which pillar plates and watch movements are produced "and which control the standard or commercial sizes by which the movements are designated and known in the trade" is uniform; and the same is true of their testimony with reference to the shoulders of the plates and to the surface dimensions of the plates required for the construction of 11½ and 10½ ligne movements.

We have carefully examined the record before us and find no compelling reason to depart from the conclusion reached by the appellate court in the *Invicta* case, *supra,* that neither the stems nor the shoulders should be included in the measurement of the watch movements.

In the instant case there is no contention that the stems should be included in measuring the width of the movements, and we find, as did the appellate court in the *Invicta* case after an elaborate analysis of paragraph 367, *supra,* that the shoulders are not necessary to the functioning of the watch movements but are designed solely for the encasing of the movements.

We accordingly hold upon the record and the authority cited that the collector of customs properly excluded the width of the shoulders in measuring the watch movements in controversy.

There remains for our determination the question whether in measuring the movements included in this importation the collector properly assessed duty upon the basis of the measurement indicated by the line C to D as shown on photographic exhibits 1–B and 2–B.

On this phase of the case considerable evidence was introduced designed to prove that in Switzerland the size of the movements is indicated by ligne measurement which has a corresponding inch

measurement in the United States; that the movements here under consideration could not properly be constructed upon the measurement C to D on the respective movements, and could not function on plates of those widths. In other words, pillar plates of those widths would not be large enough "for the attachment thereto of the * * * parts of the movement which are normally attached to the pillar plate" of 10½ or 11½ ligne movements.

As pointed out by the appellate court in the *Invicta* case, *supra*—

* * * it seems reasonable to conclude that Congress intended in paragraph 367 (h) that only the pillar plate should be measured, and only so much thereof as was essential to the functioning of the movement, regardless of the case in which it is to be placed; that is to say, *only so much thereof as was reasonably necessary for the attachment thereto of the other parts of the movement which are normally attached to the pillar plate.* [Italics supplied.]

In holding in that case that the width of the movement was to be determined by measuring the pillar plate, exclusive of the shoulders, it would seem to follow that the measurement should be made on the assembly side of the pillar plate.

In ascertaining the width of the movement by taking the shortest surface dimension through the center of the pillar plate, the court in that case stated that only so much of the plate as was essential to the functioning of the movement should be included "regardless of the case in which it is to be placed." In so stating, the court was careful to add, however, that in the measurement only so much of the plate "as was *reasonably necessary* for the attachment thereto of the other parts of the movement which are. normally attached to the pillar plate" [italics supplied] should be included, followed by the significant remark that—

Obviously, this would exclude from the measurement * * * the width of the shoulders, which are necessary only for the encasing of the movement.

In the brief of *amicus curiae* it is suggested that the words of paragraph 367 (h) "are to be construed literally, as they were" in the *Invicta* case. We do not so interpret the reasoning of the appellate court in that case. In a very elaborate and thoroughgoing opinion, the court explored the legislative background of the statute and carefully examined it from the four corners definitely finding that subparagraph (h) was ambiguous, that the language of the paragraph was very inept and unhappily phrased, and required interpretation. As a result of its painstaking study of the case, it arrived at the conclusion above stated.

It appears from the opinion of the trial court in the *Invicta* case (71 Treas. Dec. 630, T. D. 48919) that the watch movements there under consideration were oblong movements. It was not disputed

that the collector selected the proper measurement in arriving at the shortest surface dimension through the center of the pillar or bottom plate, not including in the measurement any portion not essential to the functioning of the movement. The only controverted point there was whether the collector should have included the stems and shoulders in arriving at the dutiable width of the movements. That question was answered in the negative by the appellate court for the reasons discussed above.

Although the appellate court in the *Invicta* case was applying the statute to movements for oblong watches, while here we have movements for round watches, nevertheless, with prophetic vision, it interpreted the law in such manner as to have its appropriate application to the facts of the present case. In that case the pillar plate upon which the movements were attached would obviously have at least three dimensions—length, breadth, and diagonal—and the statute requires that the shortest surface dimension through the center of the pillar plate be taken, which would include such parts as would normally be attached to the plate, exclusive of the shoulders. Here, we have round movements for round watches and it would seem that after eliminating the shoulders the measurement should be taken which would include those parts of the movement which are normally attached to it.

Moreover, it seems clear from a visual inspection of the photographs that if the width of the pillar plate were represented by the distance from C to D, it would not include certain portions of the movement which are actually attached. A width measurement excluding only the shoulders in no wise would affect the functioning of the movements in controversy, while a measurement from indentation C to point D, in the instant case, would, according to the record before us, vitally interfere with the functioning of the movements.

Furthermore, if it should be held that the measurement of the pillar plate could be taken from indentation C, why should it not be taken from indentation Z which would result in a still shorter surface dimension? Plaintiffs raise this question in their brief and neither the Government nor *amicus curiae* has suggested an answer.

It is fair to assume that the width of the pillar plate should have an appropriate relation to the size of the movement. This cannot be attained in the present instance by measuring the pillar plate from indentation C, nor from indentations W, X, Y, or Z which have no direct relation to the essential width of the pillar plate nor to the proper construction of the movements thereon.

As pointed out by the appellate court in the *Invicta* case, *supra*, the basic rates of duty should be increased or decreased dependent

upon *the size of the movement*. In the present case, the size of the movement does not change regardless of whether the pillar plate has indentations such as C, W, X, Y, or Z, or not. With the exception of Z, the other indentations are merely mechanical adaptations to facilitate the work of mechanics in making delicate adjustments. It is not believed that Congress intended that the rate of duty should be based upon such a tenuous ground, which would lead to a system of measurement resulting in the assessment of different rates of duty upon identical movements, merely because of indentations such as those indicated on photographic exhibits 1–B and 2–B (as is urged by the Government here) since the indentations do not in any way alter the size of the movement. In this connection, it is important to keep before us what the appellate court said in the *Invicta* case, *supra* —

\* \* \* We think it is apparent from a reading of paragraph 367 (a) (1) that Congress intended to assess a graduated duty upon watch movements according to the *size* of their *assembled parts*, the higher duty being imposed upon the *smaller movements*, and that this was done presumably upon the theory that the cost of production of watch movements increases as their size decreases; therefore, in order to protect the American watch manufacturers, a higher duty was necessary upon smaller movements than upon larger ones. [Italics supplied.]

Other cases cited by counsel in their briefs have been reviewed but we deem it unnecessary to discuss them here.

After considering the legislative history of paragraph 367, implemented by information which appears in the trade data prepared in conjunction with the Swiss Trade Agreement, the report of the Tariff Commission prepared in response to requests from the Committee on Finance of the United States Senate and the Committee on Ways and Means of the House of Representatives upon the subject of watches and their parts (Report No. 20, plaintiffs' exhibit J for identification), and the uncontroverted evidence in the record before us, we have reached the conclusion that the measurement from point A to point B on the 10½ and 11½ ligne movements is the shortest surface dimension through the center of the pillar or bottom plate reasonably necessary to accommodate all of the parts essential to the normal functioning of the movements, in harmony with the principles laid down by the appellate court in the *Invicta* case, *supra*.

We accordingly hold that the width of the pillar plate from point A to point B meets the requirements of subparagraph (h), *supra*, for the assessment of duty upon the movements in controversy. Each protest is sustained only to the extent indicated and the decision of the collector of customs is reversed.

Judgment will be entered in favor of the plaintiffs in accordance with the views above expressed.