United States *v.* Helbros Watch Co. and Emil Leichter (No. 4624)[1]

United States Court of Customs and Patent Appeals, April 3, 1950 ·

*David N. Edelstein,* Assistant Attorney General (*Richard P. Weeks,* special attorney, of counsel), for the United States.

---
[1] C. A. D. 430.

*Lane, Young & Fox* (*William H. Fox* of counsel) for appellees.
*Eugene F. Blauvelt, amicus curiae.*

[Oral argument December 7, 1949, by Mr. Weeks, Mr. Fox and Mr. Blauvelt]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, C. D. 1166 (22 Cust. Ct. 95), sustaining the protests of the respective appellees (the cases being consolidated for trial) against the duty assessments by the Collector of Customs at the port of New York upon certain importations of Swiss watch movements, the duties being determinable upon the basis of the width of the movements as ascertained by measurement through the center of the pillar or bottom plates to which the movements are attached.

The merchandise was classified and duties assessed by the collector under paragraph 367 (a) (1) of the Tariff Act of 1930, as modified respecting duty rates by the trade agreement (T. D. 48093, 69 Treas. Dec. 74) between the United States and Switzerland. Only the base rate designated in the paragraph, as modified, is involved in the controversy and the pertinent statutory phraseology reads:

367 (a) Watch movements, and time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, *if less than 1.77 inches wide and not having more than 17 jewels,* whether or not in cases, containers, or housings:

    (1) If more than 1 inch wide_____$0.90 each.
    If more than %0 of 1 inch but not more than 1 inch wide____$1.20 each.
    If more than %0 of 1 inch but not more than %0 of 1 inch wide_$1.35 each.
    If %0 of 1 inch or less wide_____$1.80 each.

In subparagraph (h) of paragraph 367 Congress set forth the method by which the width of the movements for ascertaining the rate of duty shall be determined in the following language (omitting parts not here pertinent as indicated by asterisks):

367 (h) For the purposes of this paragraph the width of any movement * * * shall be the shortest surface dimension through the center of the pillar or bottom plate, or its equivalent, not including in the measurement any portion not essential to the functioning of the movement, * * *.

In the case of appellee Helbros Watch Co. (Protest 110594–K/94) the merchandise was known as "11½ ligne round," ligne being a French term used as a unit of measure in the Swiss watch industry.*

*From Circular C432 entitled "TESTING OF TIMEPIECES" issued by the United States Bureau of Standards we quote the following:
    The size of a watch is the *diameter of its pillar plate.* When the watch is elliptical the size is the smaller of the two diameters. [Italics supplied.]
    There are in general use two systems for designating watch sizes; namely, the French or Swiss system based on the Paris inch and the American system based on the United States inch.

The collector's holding as to the width of the movements was that it is "more than $\%_0$ of 1 inch but not more than 1 inch wide," and a base duty of \$1.20 per movement was assessed. The importers claimed that "said movements measure more than one inch and less than 1.77 inches in width and therefore are properly dutiable at 90¢ ea."

In the case of appellee Leichter (Protest 104821–K/2001) where the merchandise was known as "10½ ligne round," the width of the movements was held by the collector to be "more than $\%_0$ of 1 inch but not more than $\%_0$ of 1 inch," and a base duty of \$1.35 per movement was assessed. The importer claimed the movements to be "more than $\%_0$ of 1 inch but not more than 1 inch in width," and properly dutiable at \$1.20 each.

The issues in the respective cases are identical in principle.

Samples stipulated to be representative of the respective sets of movements were introduced in evidence as Exhibits 1 and 2 and photographs of those exhibits were introduced as Exhibits 1–B and 2–B. Exhibits 1–A and 2–A, respectively, were also introduced as illustrative of the pillar or bottom plates referred to in subparagraph (h) of paragraph 367, *supra*, and the photographs, Exhibits 1–B and 2–B, illustrate such pillar or bottom plates in enlarged form.

We quote the following respecting the exhibits from the decision of the trial court:

Exhibit 1–B is a photograph illustrating in enlarged form both surfaces of exhibit 1–A, namely, the dial side and the assembly side, respectively, * * *

Exhibit 2–B is a photograph illustrating in enlarged form both surfaces (likewise identified as the assembly side and the dial side, respectively), and the edge view of exhibit 2–A, * * *.

The measurements, in inches from point A to point B, and from point C to point D, on the "assembly side," and from point E to point F, on the "dial side," of exhibits 1–A and 2–A, have been noted on exhibits 1–B and 2–B, respectively, and by agreement of the parties hereto * * * such measurements are as follows:

### Exhibit 1–B

| Surfaces measured | Measurements |
| --- | --- |
| *From point A to point B* (i. e. from one edge to the opposite edge of the assembly side of the plate). | 1.0079 inches or more than 1 inch but less than 1.77 inches. |
| *From point C to point D* (i. e. from one edge of cut at C to opposite edge of the assembly side of the plate at D). | 0.9792 inch or more than $\%_0$ of 1 inch but not more than 1 inch. |
| *From point E to point F* (i. e. from one edge to the opposite edge of the dial side of the plate). | 1.0213 inches or more than one inch but less than 1.77 inches. |

The Paris inch is $\%_2$ of a Paris foot, which is $\%$ of the French toise. This inch is subdivided into 12 lignes, which are used in designating the size of most foreign-made watches.

The American system, originated by Aaron L. Dennison, uses a series of numbers with zero (0) size equal to $3\%_0$ of a United States inch, and successive sizes differing by $\%_0$ of an inch. Size 1 is, therefore, $\%_0$ inch more than size 0, or $3\%_0$ inch, while size 00 or $\%$ is $\%_0$ inch less than size 0, or $3\%_0$ inch, etc A table follows making comparisons of the systems which need not be quoted here.

Exhibit 2–B

| Surfaces measured | Measurements |
|---|---|
| *From point A to point B* (i. e. from one edge to the opposite edge of the assembly side of the plate). | 0.9173 inch or more than 9/10 of one inch but not more than one inch. |
| *From point C to point D* (i. e. from one edge of cut at C to opposite edge of the assembly side of plate at D). | 0.8917 inch or more than 6/10 of one inch but not more than 9/10 of one inch. |
| *From point E to point F* (i. e. from one edge to the opposite edge of the dial side of the plate). | 0.933 inch or more than 9/10 of one inch but not more than one inch. |

As may be seen from the tables in the foregoing quotation, letters on the photographs indicate certain points on the pillar plates. Of particular moment here is a notch or cut (also sometimes referred to in the record as an "indentation") indicated by the letter C.

In determining the width of the movements in Exhibits 1 and 2, for the purpose of assessing the base rate of duty, the collector measured the surface dimension of the assembly side of the pillar or bottom plate of the respective movements from the edge of the notch, or indentation, identified by the letter C through the center of the plate to a point identified by the letter D on the opposite edge of the plate, thus determining the width of the movements illustrated by Exhibit 1 to be 0.9792 inch, or more than 9/10 of 1 inch but not more than 1 inch (duty assessment being made at $1.20 per movement), and the width of the movements illustrated by Exhibit 2 to be 0.8917 inch or more than 6/10 of 1 inch but not more than 9/10 of 1 inch (with duty assessment at $1.35 per movement).

The controversy here revolves about the question of whether it was proper to measure from the edge of the notch, or indentation, C as the collector did, The importers alleged error in that respect with alternative claims as hereinafter particularly defined.

In presenting the contentions on behalf of the Government before us both counsel for the Government and *amicus curiae* emphasized the decision of this court in the case of *United States* v. *Invicta Seeland, Inc.*, 25 C. C. P. A. (Customs) 300, T. D. 49397, wherein, speaking through the late Judge Lenroot, we construed paragraph 367 (h), *supra.*

That case was quite fully discussed by the trial court in the instant case and will be hereinafter discussed by us to. the extent deemed necessary.

It is referred to at this particular point because one holding there was to the effect that the width of what are called the shoulders at the outer edge of the pillar or bottom plate should be excluded in determining the width of the movements because they (the shoulders) "are necessary only for the encasing of the movement."

In the measurements of the collector described, *supra,* the widths of the shoulders were not included.

In the instant case it was contended on behalf of the importers (appellees) before the trial court, and it is contended before us (the trial court having overruled the contention) that the decision in the *Invicta* case, *supra,* should be reconsidered and overruled in the light of what is claimed to be a fuller factual record here presented, it being one of their claims that measurements for width should be made from points indicated on the photographs by the letter E on the edges of the plates through the centers to points indicated on the opposite edges by the letter F—that is, the third items listed in the respective tables, *supra.* Such measurements would include the widths of the shoulders in the width of the movements.

As stated, the trial court expressly overruled the contention so made on behalf of the importers upon this phase of the case, and no cross-appeal was taken by the importers.

The alternative claims of the importers which the trial court upheld are for rates of duty based upon measurements which do not include the widths of the shoulders in the width of the movements, such measurements being from points indicated on the photographs by the letter A through the centers of the assembly sides of the plates to points at the opposite edges indicated by the letter B. See the first items listed in tables, *supra.*

By a coincidence it so happens that in these particular cases, so far as dollars and cents are concerned, a recovery by the importers upon the basis of measurements which would include the widths of the shoulders in the width of the movements would be the same in amount as that covered by the judgment of the trial court, i. e. 90 cents per movement in the Helbros Watch Co. case and $1.20 per movement in the Leichter case.

Because of this fact, it is contended by counsel for the importers that a judgment reversing our holding in the *Invicta* case, *supra,* and directing assessment of duties in conformity with the first of their alternative claims would not be more favorable than the judgment rendered by the trial court and, therefore, that it was not incumbent upon the importers to appeal to us as to the question decided against them.

We are not prepared to accept this view of counsel for the importers upon the record before us.

The protests apparently are sufficient to permit the raising of both contentions before the trial court, but that tribunal, having in its decision expressly overruled the first contention and having in the judgment (stating it to be "in conformity with said decision") adjudged that "All other claims of plaintiffs are overruled," it seems to us that to obtain a review by this court of the overruled claims upon what

in effect amounted to a classification it was incumbent upon the importers to cross-appeal.

While, as stated, the dollars and cents portion of the judgment would not be changed in these particular cases by the construction for which counsel for the importers contend, such construction, in certain aspects, might, in the general administration of the Customs statutes, prove to be a much more favorable judgment than the one now standing in their favor.

In construing and administering Customs statutes, money judgments in particular cases may not always be accepted as "the end of the law."

We turn now to the holding of the trial court to the effect that the collector erred in assessing duty upon the basis of the measurement indicated by the line C to D as shown on photographic Exhibits 1–B and 2–B, and sustaining the claims of the importers by holding that the width of the pillar plate from point A to B, as indicated on the photographic exhibits "meets the requirements of subparagraph (h), *supra*, for the assessment of duty upon the movements in controversy." (See tables, *supra*.)

Upon the facts here appearing, it is our view that the instant case is clearly distinguishable from the *Invicta* case, *supra*, in respects which are amply stated in the well considered opinion of the trial court.

It was said in our decision in the *Invicta* case, *supra* (25 C. C. P. A. (Customs), at pages 305 and 306):

We would first observe that paragraphs 367 (a) (1), (c) (2), and (h) are new legislation in the Tariff Act of 1930. The Tariff Act of 1922 made no reference to the width of watch movements. We think it is apparent from a reading of paragraph 367 (a) (1) that Congress intended to assess a graduated duty upon watch movements according to the size of their assembled parts, the higher duty being imposed upon the smaller movements, and that this was done presumably upon the theory that the cost of production of watch movements increases as their size decreases; therefore, in order to protect the American watch manufacturers, a higher duty was necessary upon smaller movements than upon larger ones.

In order to insure this, paragraph 367 (h) was enacted. That this paragraph is ambiguous is clear; that it is awkwardly and unhappily worded is certain; and that, standing alone, it is susceptible of two constructions is apparent.

\*     \*     \*     \*     \*     \*     \*

Having in mind that Congress intended to place a higher duty upon a movement made up of small parts than upon a movement made up of larger parts, we should adopt that construction of paragraph 367 (h) which will best serve such purpose.

It is fair to assume that Congress considered the pillar plate as the basic feature of a watch movement, for in paragraph 367 (c) (2) it is provided that pillar plates shall be subject to one-half the amount of duty which would be borne by the complete movement. Bearing in mind that the pillar plate is the foundation plate upon which nearly all of the different parts of the movement are erected or

built, it is plain that the size of the various parts of a movement, generally speaking, is dependent upon the size of the pillar plate. Therefore it seems reasonable to conclude that Congress intended in paragraph 367 (h) that only the pillar plate should be measured, and only so much thereof as was essential to the functioning of the movement, regardless of the case in which it is to be placed; that is to say, only so much thereof as was reasonably necessary for the attachment thereto of the other parts of the movement which are normally attached to the pillar plate.

Obviously, this would exclude from the measurement the length of the stem, which is no part of the pillar plate, and 'the width of the shoulders, which are necessary only for the encasing of the movement.

In the instant case, the notch identified by the letter C has nothing to do with the winding stem or the shoulders, the two features involved in the *Invicta* case, *supra*, and the trial court found:

* * * it seems clear from a visual inspection of the photographs that if the width of the pillar plate were represented by the distance from C to D, it would not include certain portions of the movement which are actually attached. A width measurement excluding only the shoulders in no wise would affect the functioning of the movements in controversy, while a measurement from indentation C to point D, in the instant case, would, according to the record before us, vitally interfere with the functioning of the movements.

Incidentally it may be said that other notches are shown in the edges of the respective pillar plates, but neither they nor the notch C affect the standard sizes of the plates. If the pillar plates were reduced in dimension by cutting the entire edges to the extent of such notches the utility of the plates for the size of the watch movements designed would, of course, be destroyed.

In connection with its conclusion, the trial court said:

After considering the legislative history of paragraph 367, implemented by information which appears in the trade data prepared in conjunction with the Swiss Trade Agreement, the report of the Tariff Commission prepared in response to requests from the Committee on Finance of the United States Senate and the Committee on Ways and Means of the House of Representatives upon the subject of watches and their parts (Report No. 20, plaintiffs' exhibit J for identification), and the uncontroverted evidence in the record before us, we have reached the conclusion that the measurement from point A to point B on the 10½ and 11½ ligne movements is the shortest surface dimension through the center of the pillar or bottom plate reasonably necessary to accommodate all of the parts essential to the normal functioning of the movements, in harmony with the principles laid down by the appellate court in the *Invicta* case, *supra*.

After carefully studying the record in the light of the very elaborate arguments presented orally and in the briefs before us, we are unable to find any justification for reversal of the trial court's findings of fact or of its conclusions based on such findings.*

The judgment appealed from is *affirmed*.

---

*In the decision of the trial court there are reproductions of the photographic exhibits which have been referred to in this opinion. We commend to those who may be interested in the subject matter a study of that court's decision, and the reproductions of the photographic exhibits will be found helpful in such study.