(C.D. 2612)

GENERAL ELECTRIC CO. *v.* UNITED STATES (GEHRIG HOBAN & CO., INC., A/C THE HUBLEY MFG. CO., PARTY IN INTEREST)

United States Customs Court, Second Division

(Decided January 25, 1966)

*Barnes, Richardson & Colburn* (*James F. Donnelly* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Richard J. Kaplan* and *James S. O'Kelly,* trial attorneys), for the defendant.

Party in interest not represented by counsel.

Before Rao and Ford, Judges

Ford, Judge: This action was brought by an American manufacturer pursuant to section 516(b) of the Tariff Act of 1930, as amended, against the classification by the collector of customs at the port of New York of certain timepiece movements as time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, over 1.2 but not over 1.5 inches wide, without jewels, in paragraph 367(a) of the Tariff Act of 1930, as modified by the trade agreement with Switzerland, 69 Treas. Dec. 74, T.D. 48093, supplemented by Presidential proclamation, 89 Treas. Dec. 175, T.D. 53551, and the assessment of duty thereon at the rate of 84 cents each.

Plaintiff's contention is that the merchandise in issue should properly have been classified as clocks or clock movements, valued over $2.25 but not over $5 each, in paragraph 368(a) of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas, Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 337, T.D. 52820, and assessed with duty at the compound rate of 75 cents each, plus 32½ per centum ad valorem.

At the time of importation, the timepiece movements referred to above were enclosed in cases. Said cases together with hands and dials were classified separately as wholly or partly manufactured

articles, composed of cellulose acetate, in paragraph 31 of the Tariff Act of 1930, by virtue of the similitude provision of paragraph 1559 of said tariff act, as amended by the Customs Simplification Act of 1954, T.D. 53599, and duty was imposed thereon at the rate of 17 per centum ad valorem.

The provisions of section 516(b), pursuant to which this action is before us for determination, read as follows:

(b) * * * The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of, and the rate of duty, if any, imposed upon, designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary, setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief. If the Secretary decides that the classification of, or rate of duty assessed upon, the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform the complainant, and such rate of duty shall be assessed upon all such merchandise entered for consumption or withdrawn from warehouse for consumption after thirty days after the date such notice to the collectors is published in the weekly Treasury Decisions. If the Secretary decides that the classification and rate of duty are correct, he shall so inform the complainant. If dissatisfied with the decision of the Secretary, the complainant may file with the Secretary, not later than thirty days after the date of such decision, notice that he desires to protest the classification of, or rate of duty assessed upon, the merchandise. Upon receipt of such notice from the complainant, the Secretary shall cause publication to be made of his decision as to the proper classification and rate of duty and of the complainant's desire to protest, and shall thereafter furnish the complainant with such information as to the entries and consignees of such merchandise, entered after the publication of the decision of the Secretary at the port of entry designated by the complainant in his notice of desire to protest, as will enable the complainant to protest the classification of, or rate of duty imposed upon, such merchandise in the liquidation of such an entry at such port. The Secretary shall direct the collector at such port to notify such complainant immediately when the first of such entries is liquidated. Within thirty days after the date of mailing to the complainant of notice of such liquidation, the complainant may file with the collector at such port a protest in writing setting forth a description of the merchandise and the classification and rate of duty he believes proper. Notwithstanding such protest is filed, merchandise of the character covered by the published decision of the Secretary, when entered for consumption or withdrawn from warehouse for consumption on or before the date of publication of a decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals, rendered under the provisions of subsection (c) of this section, not in harmony with the published decision of the Secretary, shall be classified and the entries liquidated

in accordance with such decision of the Secretary, and, except as otherwise provided in this Act, the liquidations of such entries shall be final and conclusive upon all parties. If the protest of the complainant is sustained in whole or in part by a decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals, merchandise of the character covered by the published decision of the Secretary, which is entered for consumption or withdrawn from warehouse for consumption after the date of publication of such court decision, shall be subject to classification and assessment of duty in accordance with the final judicial decision on the complainant's protest, and the liquidation of entries covering such merchandise so entered or withdrawn shall be suspended until final disposition is made of such protest, whereupon such entries shall be liquidated, or if necessary, reliquidated in accordance with such final decision.

The dutiable provisions of the Tariff Act of 1930, presented for consideration, contain the following language—

Paragraph 367(a) of the Tariff Act of 1930, as modified by the trade agreement with Switzerland, *supra:*

\* \* \* time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, whether or not designed to be worn or carried on or about the person, all the foregoing, if under 1.77 inches wide, whether or not in cases, containers, or housings:

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) Having no jewels or only one jewel:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Over 1.2 but not over 1.5 inches wide_____ $0.84 each

Paragraph 368(a) of said act, as modified by the Torquay protocol, *supra:*

Clocks, clock movements, including lever movements, time-keeping, time-measuring, or time-indicating mechanisms, devices, and instruments, and any mechanism, device, or instrument intended or suitable for measuring or indicating time (not including synchronous or subsynchronous motors of less than $\frac{1}{40}$ horsepower valued not over $3 each without counting the value of gears or other attachments, and except the articles enumerated or described in paragraph 367, Tariff Act of 1930), whether or not in cases, containers, or housings:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Valued over $2.25 but not over $5 each__ 75¢ each and
32½% ad val.

Satisfaction of the procedural steps required of an American manufacturer to avail himself of the right to protest the classification of importations of merchandise of a class or kind manufactured, pro-

duced, or sold at wholesale by him is indicated by the documents received in evidence as plaintiff's collective exhibit 1.

Other exhibits received in evidence on behalf of plaintiff are the following:

Exhibit 2—official papers including the invoice and entry papers covering the instant importation.

Exhibit 3—a complete wall clock, part of the importation.

Exhibit 4—an electric movement representative of the one contained in exhibit 3.

Exhibit 5—electric movement similar to exhibit 4 but produced in the United States.

Exhibit 6—complete wall clock manufactured in the United States.

Exhibit 7—diagram illustrating and describing the mechanisms of watches.

During the trial of the case, counsel for the parties stipulated and agreed that exhibit 4 was not a watch movement. It was agreed further that, as to the mechanisms in issue, the pillar plates thereof, by themselves, measured 1.32 inches in shortest surface dimension through the center, and that by including the motors in said measurement the pillar plates would come to between 1.9 and 2 inches in diameter.

Witnesses who appeared and testified for the plaintiff at the trial included Hans Springer, employed for 29 years by the plaintiff company, and since 1935 has been in supervisory positions as designing engineer, manager of clock designs, and manager of advanced engineering in the clock department. Prior to his connection with the General Electric Co., he was employed by the Electric Time Co. where he started to work as an instrument maker and subsequently advanced into managerial positions in charge of clock design and time device development. Plaintiff's second witness was Harold L. Rapp, an employee of the Bulova Watch Co. for some 15 years, beginning as a journeyman in their assembly department, advancing to assistant foreman in the aircraft clock department working on jewel bearings, and subsequently head of the service department and serving in other administrative positions with the concern. He had prior experience in the watch business for a total of 24 years in the line. He is a certified master watchmaker of the Horological Institute of America and a director of the American Watchmakers Institute, a national organization of professional watchmakers, the function of which is to disseminate information of a technical and general nature. Plaintiff's third witness was Richard W. Slaugh, connected with the Hamilton Watch Co. for 45 years, and manager of the foreign technical service of that company. During his employment, he has worked

in various departments in connection with service, research, inspection, assembly and quality control.

Two additional witnesses were available in the courtroom, Ernest W. Drescher and Max Schwartz, both of the Bulova Watch Co. Inasmuch as their testimony would be cumulative to that already presented to the court, it was agreed by respective counsel for the parties that if Messrs. Drescher and Schwartz, concededly qualified to testify, were called they would give the same testimony both on direct and cross, and redirect and re-cross-examination, as was given by the three plaintiff's witnesses, above referred to, previously called by plaintiff.

In the opinion of plaintiff's witnesses, exhibit 4 is not a time-keeping, time-indicating, or time-measuring device, mechanism, or instrument for the reason that it must be plugged into an electric outlet and the fact that it is governed by a generator at a power station. If the power at the station should run fast, the clock will run fast, and if it should run slow, the clock will run slow. In their opinion, exhibit 4 does not contain within itself any regulating device such as a balance assembly, an escapement, a pendulum, or any other regulating or governing device or part.

Witness Springer testified to his familiarity with cuckoo clocks which do not have balance springs, balance wheels, or hairsprings, and stated that he considers such articles to be clocks, and, as such, time-keeping, time-indicating, or time-measuring instruments although they do not possess the usual type of escapement consisting of a balance wheel and hairspring. The same would hold true as to pendulum clocks, water clocks, and even sundials.

Although the witnesses were unanimous in their opinion that exhibit 4 was not a time-keeping, time-indicating, or time-measuring device because it had to depend upon the frequency of the electricity generated at the power station, they did admit that the function and purpose of the device was to enable a person to tell the time of day.

The record discloses that, as to plaintiff's exhibit 4, the plate upon which there are molded posts is the pillar plate of the movement, upon which the parts of the movement are assembled.

In the light of the provision in subsection (h) of paragraph 367 of the Tariff Act of 1930, which reads—

For the purposes of this paragraph the width of any movement, mechanism, device, or instrument, shall be the shortest surface dimension through the center of the pillar or bottom plate, or its equivalent not including in the measurement any portion not essential to the functioning of the movement, mechanism, device, or instrument.

the parties hereto are in agreement that the pillar plate of exhibit 4, by itself, measures 1.32 inches, and, by including the motor in said

measurement, the pillar plate would come to between 1.9 and 2 inches in diameter.

A perusal of the imported articles and a consideration of the testimonial record might at first lead one to the conclusion that, as claimed by the plaintiff herein, the movements at bar should properly be classified within the provision for clocks or clock movements in paragraph 368(a) of the Tariff Act of 1930, as modified.

However, in addition to the presumption of correctness which attaches to the classification of the collector of customs, and which it is incumbent upon a protestant to overcome (*United States* v. *Williams Clarke Co., a/c American Agar and Chemical Co.*, 50 CCPA 67, C.A.D. 822), it should be kept in mind that contained in the provisions of said paragraph 368(a), as set forth above, is the exclusionary language reading, "except the articles enumerated or described in paragraph 367, Tariff Act of 1930."

For the plaintiff to succeed herein, it must be shown that the imported articles are not time-keeping, time-measuring, or time-indicating devices or instruments, and that the shortest surface dimension of the pillar or bottom plates thereof is more than 1.77 inches in width.

As to the first of these considerations, it appears to be the position of plaintiff that inasmuch as the devices do not contain within themselves some regulatory device such as a balance wheel with hairspring, operating through an escapement, which controls the telling or indicating of time, said devices may not be said to be time-keeping or time-indicating devices. We are not inclined to that view inasmuch as nothing contained in the language of the statutory provision sets forth any qualifications as to the means by which time is to be kept or indicated, or the manner in which such devices are to be activated.

The plaintiff's witnesses admit the fact that the devices at bar do indicate the time of day. Since the provision in paragraph 367(a) of the Tariff Act of 1930, as modified, is for time-keeping or time-indicating devices or instruments, a device which does keep time comes within the said *eo nomine* provision even though the device may not perform said function with exact precision or unerring constancy. There is no qualifying language in the statutory provision for such devices which demands precision, and we are of the opinion that the fact the instant devices are powered by electric current which is subject to changes of rate brought about by the generating source which might affect the accuracy of the timepieces is not a barrier to the classification of the imported articles as time-keeping or time-indicating devices or instruments in paragraph 367(a) of the Tariff Act of 1930, as modified, *supra*.

The second consideration is whether the imported time-keeping and time-indicating devices or instruments are of the dimensions provided for in paragraph 367(h) of said act. The measurement of pillar or

bottom plates of timepieces covered by paragraph 367 has been the subject of consideration by this and the appellate court in several cases, which have been referred to by the parties in their briefs, and said rulings will prove to be guidelines in the determination of this point in the instant case.

For clarity, although at the expense of repetition, we set forth the specific language of paragraph 367(h) of the Tariff Act of 1930—

For the purposes of this paragraph the width of any movement, mechanism, device, or instrument, shall be the shortest surface dimension through the center of the pillar or bottom plate, or its equivalent, not including in the measurement any portion not essential to the functioning of the movement, mechanism, device, or instrument.

It is the position of the plaintiff, in the instant case, that since the synchronous motor is essential to exhibit 4 the measurement called for in paragraph 367(h) should be the width of the pillar plate through its center including in the dimension the synchronous motor which extends over the edge of the pillar plate. Defendant contends, however, that the measurement called for by the statute, as it has been judicially construed, confines the measurement to the pillar plate itself.

The leading case on the subject of measurement of pillar or bottom plates is *United States* v. *Invicta Seeland, Inc.*, 25 CCPA 300, T.D. 49397. We quote therefrom the following—

Having in mind that Congress intended to place a higher duty upon a movement made up of small parts than upon a movement made up of larger parts, we should adopt that construction of paragraph 367(h) which will best serve such purpose.

It is fair to assume that Congress considered the pillar plate as the basic feature of a watch movement, for in paragraph 367(c)(2) it is provided that pillar plates shall be subject to one-half the amount of duty which would be borne by the complete movement. Bearing in mind that the pillar plate is the foundation plate upon which nearly all of the different parts of the movement are erected or built, it is plain that the size of the various parts of a movement, generally speaking, is dependent upon the size of the pillar plate. Therefore it seems reasonable to conclude that Congress intended in paragraph 367(h) that *only the pillar plate should be measured, and only so much thereof as was essential to the functioning of the movement*, regardless of the case in which it is to be placed; *that is to say, only so much thereof as was reasonably necessary for the attachment thereto of the other parts of the movement which are normally attached to the pillar plate.* [Italics supplied.]

Obviously, this would exclude from the measurement the length of the stem, which is no part of the pillar plate, and the width of the shoulders, which are necessary only for the encasing of the movement.

    *      *      *      *      *      *      *

We do not think that, in providing for the measurement of a watch movement, Congress was at all concerned with such movement being fitted into a case, for the relative size of movements could be much more

accurately ascertained without regard to the stem or the shoulders of the pillar plate.

We are clear that paragraph 367 (h) should be so construed, if its language will reasonably bear such a construction.

As the trial court construed paragraph 367 (h), it seems to us that it would in effect read as follows, the words supplied being in italics:

> (h)   For the purpose of this paragraph the width of any movement, mechanism, device, or instrument, shall be the shortest surface dimension *of the movement* through the center of the pillar or bottom plate, or its equivalent, not including in the measurement any portion *of the movement* not essential to the functioning of the movement, mechanism, device, or instrument, *when set in a case.*

On the other hand, we think that a construction more in harmony with the object of Congress would regard the paragraph as reading, in effect, as follows, the words supplied being in italics:

> (h)   For the purposes of this paragraph the width of any movement, mechanism, device, or instrument, shall be the shortest surface dimension through the center of the pillar or bottom plate, or its equivalent, not including in the measurement *of said plate* any portion *thereof* not essential to the functioning of the movement, mechanism, device, or instrument.

The above construction given to the measurement of the width of pillar or bottom plates has been consistently followed by this and the appellate court in subsequent cases.   Note: *Abercrombie & Fitch Co.* v. *United States,* 2 Cust. Ct. 249, C.D. 135; *S. Kaufman* v. *United States,* 15 Cust. Ct. 124, C.D. 958; *Helbros Watch Co. and Emil Leichter* v. *United States,* 22 Cust. Ct. 95, C.D. 1166, affirmed on appeal *United States* v. *Helbros Watch Co. and Emil Leichter,* 38 CCPA 1, C.A.D. 430; *Winton Watch Co., Inc.* v. *United States,* 35 Cust. Ct. 183, C.D. 1741.   And nothing has been presented to us which would cause us to depart from said view in the circumstances of the present case.

As stated above, an agreement has been entered into by the parties hereto that the shortest surface dimension through the center of the pillar plates of the instant movements is 1.32 inches, which is well within the width specification of paragraph 367 (a) of the Tariff Act of 1930, as modified.

We conclude, therefore, that since the record presented to us supports rather than negates the action of the collector of customs in classifying the imported timepiece movements as time-keeping, time-measuring, or time-indicating mechanisms, devices, or instruments, over 1.2 inches but not over 1.5 inches wide, within the provisions of paragraph 367 (a) of the Tariff Act of 1930, as modified by the Swiss Trade Agreement, *supra,* with the consequent duty assessment at the rate of 84 cents each, said decision of the collector is affirmed and all claims in the protest are overruled.

Judgment will be entered accordingly.